IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

GARY S. BRADLEY and REBECCA J.
BRADLEY, individually and on behalf of all
others similarly situated                                    **PLAINTIFFS**

v.                            Case No. 3:21-cv-00079-BSM

XTO ENERGY, INC.                                      **DEFENDANT**

---

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS
CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES,
AND APPOINTMENT OF CLASS COUNSEL**

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ i

TABLE OF AUTHORITIES ....................................................... iii

I.   INTRODUCTION ................................................................1

II.  LEGAL STANDARD ............................................................2

III. FACTUAL BACKGROUND .................................................4

   A.   XTO's Uniform Royalty Payment Practices ...................4

IV.  ARGUMENT .......................................................................6

   A.   Plaintiffs have met their burden of satisfying Rule 23(a)'s
        Requirements (1) numerosity; (2) commonality; (3) typicality;
        and (4) adequacy. ...........................................................7

       1.   Numerosity. .............................................................7

       2.   Commonality. ...........................................................8

       3.   Typicality. ..............................................................11

       4.   Adequacy. ..............................................................13

   B.   Plaintiffs Satisfy Rule 23(b)(3) .....................................13

       1.   Common Questions of Law and Fact Predominate. ....13

       2.   A Class Action is Superior to Any Other Method of
            Adjucating These Claims .......................................15

   C.   Plaintiffs Satisfy Rule 23(b)(2) .....................................18

V.   NOTICE ...........................................................................19

**VI.   CLASS DEFINITION**...............................................................................**20**

**VII.  CONCLUSION**........................................................................................**23**

# TABLE OF AUTHORITIES

## Cases

*Amgen Inc. v. Conn. Ret. Plans & Trust Fundings*, 568 U.S. 455,
  133 S.Ct. 1184, 185 L.Ed.2d 308 (2013) ......................................................4

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231,
  138 L.Ed.2d 689 (1997). ...............................................................17, 20

*Arkansas Louisiana Gas Co. v. Morris*, 294 Ark. 496,
  744 S.W.2d 709 (Ark. 1988) ...........................................................14, 17

*Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 WL 764500
  (W.D. Okla. April 20, 2009) ....................................................................17

*Bodcaw Oil Co., Inc. v. Atlantic Refining Co.*, 217 Ark. 50,
  228 S.W.2d 626 (1950). ............................................................................16

*Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870
  (N.D. Iowa 2008) ...............................................................................23, 25

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004)...........................27

*Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269 (8th Cir. 1990) ....................................18

*Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676 (E.D. Okla. Oct. 3, 2019)...............15

*Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. 02-1236 RHK/AJB,
  2003 WL 1955169 (D. Minn. Apr. 21, 2003) ...................................................4

*Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543 (W.D.Mo. 2014) ................11

*Freebird, Inc. v. Merit Energy Co.*, Civil Action No. 10-1154-KHV-JPO,
  2011 WL 13638 (D.Kan. Jan. 4, 2011) .........................................................19

*Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 100 S.Ct. 1698,
  64 L.Ed.2d 319 (1980) .................................................................................3

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.2d 402 (6th Cir. 2012) .................15

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975).........................29

*Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417 (4th Cir. 2003) ....................25

\
*Hanna Oil v. Taylor*, 759 S.W.2d 563 (Ark. 1988). ...............................................16

*Hill v. Kaiser-Francis-Oil Co.*, No. CIV-09-07-R,
  2010 WL 2474051 (W.D. Okla. June 9, 2010) ..............................................8

*In re Marion Merrell Dow Inc., Sec. Litig.*,
  No. 92-0609-CV-W-6, 1994 WL 396190 (W.D. Mo. July 18, 1994) ..........12

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litig.*,
  No. 11-MD-2247 ADM/JJK,
  2012 WL 2512750 (D.Minn. June 29, 2012) .........................................18, 20

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
  644 F.3d 604 (8th Cir. 2011)...............................................................21, 22

*Klay v. Humana*, 382 F.3d 1241 (11th Cir. 2004)............................................24, 27

*McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI,
  2020 WL 1970812 (D.Or. Apr. 24, 2020).......................................................5

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306,
  70 S.Ct. 652, 94 L.Ed. 865 (1950) ...............................................................29

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982) ...................................12

*Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985) .........................................24, 25

*SEECO, Inc. v. Haes*, 330 Ark. 402, 954 S.W.2d 234 (Ark. 1997) .................14, 27

*Smith v. ConocoPhillips Pipeline Co.*, 298 F.R.D. 575 (E.D. Mo. 2014)..............18

*Smith v. SEECO*, Case No. 4:14CV00435, 2016 WL 10586286
  (E.D. Ark. April 11, 2016) .......................................................................5, 17

*Stuart v. State Farm Fire and Casualty Company*, 910 F.3d 371
  (8th Cir. 2018)..............................................................................................10

*Valentino v. Carter-Wallace*, 97 F.3d 1227 (9th Cir. 1996) ..................................26

*Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL,
    2018 WL 1955425 (W.D. Mo. Apr. 24, 2018),
    *aff'd*, 963 F.3d 753 (8th Cir. 2020)...............................................28

*W.W. McDonald Land Co. v. EQT Production Co.*, 983 F.Supp.2d 790
    (S.D.W.Va. 2013).......................................................................9

*Walls v. Sagamore Ins. Co.*, 274 F.R.D. 248 (W.D.Ark. 2011).......................11, 18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541,
    180 L.Ed.2d 374 (2011) ........................................................5, 6, 13

## Statutes

Ark. Code Ann. § 15-72-305.......................................................... passim

## Other Authorities

AMI 2401 .........................................................................13

AMI 2445 .........................................................................13

## Rules

Fed. R. Civ. P. 23(a)............................................................2, 3

Fed. R. Civ. P. 23(a)(1).........................................................10

Fed. R. Civ. P. 23(b)(2).........................................................23

Fed. R. Civ. P. 23(b)(2)—(3) ....................................................4

Fed. R. Civ. P. 23(b)(3).........................................................19

Fed. R. Civ. P. 23(c)(2)(B)......................................................23

Fed. R. Civ. P. 23(b)(3).........................................................18

Fed. R. Civ. P. 23(a)(2).......................................................12, 14

Fed. R. Civ. P. 23(b)(2).........................................................23

Fed. R. Civ. P. 23(b)(3).........................................................17

Fed. R. Civ. P. 23(b)(3)(C) .....................................................22

Fed. R. Civ. P. 23(b)(3)(D) ....................................................................22

Fed. R. Civ. P. 23(c)..............................................................................23

Fed. R. Civ. P. 23(c)(1)(B)......................................................................24

Fed. R. Civ. P. 23(g) .............................................................................17

**Treatises**

*Restatement (Second) of Contracts* § 211(2) (1981)...............................................10

Plaintiffs Gary S. Bradley and Rebecca J. Bradley, individually and on behalf of all others similarly situated ("Plaintiffs") submit this brief supporting their Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel.

## I.   **INTRODUCTION**

This is a straightforward case involving the Defendant's XTO's scheme and course of conduct in its underpayment of royalties owed to Class Members with whom they have entered into oil and gas leases. Plaintiffs' claims are susceptible to common proof—because they all turn on a common course of conduct—XTO's royalty calculation and payment practices it applies uniformly to all Class members.

Specifically, XTO disregards the express language of their oil and gas leases that provide for royalties to be paid on a percentage of the gross proceeds, and instead withhold postproduction costs from the Plaintiffs and Class's Royalty Checks. Acknowledging this wrongful practice (after this case was filed), XTO first attempted to tender the Plaintiffs a check for $7,787.67 (supposedly the deductions XTO had wrongfully taken from them). This amount is now on deposit with the registry of the Court. XTO's wrongful deductions were not isolated to the Plaintiffs, and other class members with "gross proceeds" type leases have seem similar unlawful deductions.

XTO directed its conduct to all Class Members equally, who suffered the same

injury. As a result—all Class Members did not receive the full royalties they were owed by contract. Plaintiffs' allegations—which involve substantially uniform contracts, a uniform body of law, and uniform conduct by XTO—can and will be proven with evidence common to all Class Members.

## II.   LEGAL STANDARD

A Court should certify a proposed class, when a plaintiff demonstrates satisfaction of the requirements found in Rule 23(a) and (b) of the Federal Rules of Civil Procedure. Rule 23(a) sets forth four prerequisites:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are requirements of law or fact common to the class;

(3)   the claims or defenses or the representative parties are typical of the claims and defenses of the class; and

(4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are commonly called: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319, 329 (1980).

After satisfying the requirements of Rule 23(a), a plaintiff must also establish that the action qualifies for class action treatment of one of the three criteria in Rule 23(b), two of which are relevant here:

(2)   the party opposing the class has acted or refused to act on

-2-

grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3)    the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

   (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

   (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

   (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

   (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(2)—(3).

When determining whether to grant class certification, the United States Supreme Court has held "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage . . . [m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Fundings*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1194-95, 185 L. Ed.2d 308 (2013). The proposed class representatives are responsible for demonstrating satisfaction of Rule 23. *See Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. 02-1236 RHK/AJB, 2003 WL 1955169, at *2 (D. Minn. Apr. 21,

2003).[1] "The class certification analysis under Rule 23 is 'rigorous' and may 'entail some overlap with the permits of the plaintiffs underlying claim,'" *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-CV-1921-SI, 2020 WL 1970812, at * 2 (D.Or. Apr. 24, 2020)(*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S.Ct. 2541, 2551, 180 L.E.2d 374 (2011)), but "[m]erits questions may be considered [only] to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. " *Id.*

Here, the proposed Class meets all the requires of Rule 23(a) and the requirements of Rule 23(b)(2) and Rule 23(b)(3). As explained in exhaustive detail herein, the claims of Plaintiffs and the Class Members will either succeed or fail as one based on the Court's legal interpretation of the leases and XTO's conduct, rendering class treatment appropriate.

## III.   FACTUAL BACKGROUND

### A.   XTO's Uniform Royalty Payment Practices

Plaintiffs and the Class Members own mineral interests in wells throughout

---

[1]      Some courts have suggested that Rule 23 has two "implicit requirements": "That membership in the class definition by ascertainable by some objective standards and that the class representatives be members of the proposed class." *Smith v. SEECO*, Case No. 4:14CV00435, 2016 WL 10586286, at *4 (E.D. Ark. April 1, 2016)(quotation omitted). Whether or not a class member is a royalty owner in Arkansas wells where XTO has owned and operated under any one of the following lease forms is completely objective and there is no question Plaintiffs are members of the proposed Class.

Arkansas and have entered into oil and gas leases with XTO. Beginning at least in 2020, XTO began to unlawfully take post-production deductions from the Class Member's leases, despite the clear language of the leases prohibiting this practice.

XTO owes these royalty payments to Plaintiffs and the Class Members under the leases based on the gross proceeds received by XTO. XTO is responsible to the Plaintiffs to correctly determine, calculate and pay the royalties owed to the Plaintiffs and the Class Members on the gas produced from the Arkansas wells.

Plaintiffs have analyzed leases produced by XTO, which represent common lease forms with identical royalty payment terms requiring royalty payments to be based on gross proceeds. *See* Exhibits Nos. 2—11, *Lease Summaries*. The leases objectively determine class membership, as explained herein. *See Hill v. Kaiser-Francis-Oil Co.*, No. CIV-09-07-R, 2010 WL 2474051, *6 (W.D. Okla. June 9, 2010)("the identities of the class members are easily ascertained from defendant's payment records and county registers of deeds"). Plaintiffs have attached a sample of ten leases for each lease form in each of these common lease groups.[2] All of these lease groups required XTO to pay royalties based on the gross

---

[2]     These Lease Form Summaries are attached as Exhibits Nos. 2—11 to Plaintiffs' Motion for Class Certification. These common types of oil and gas leases are commonly referred to as "Gross Proceeds Leases." These groups include leases with royalty clauses that provide for royalty payments based on "actual amount received," "no deduction, no cost" and/or "Gross Proceeds." There are several lease forms that make up each lease group. Nevertheless, each lease form requires XTO

proceeds received by XTO from the sale of gas under the common lease forms.

XTO did not pay Plaintiffs and the Class under the gross proceeds royalty terms of these leases and instead improperly withheld post-production expenses.

## IV.   **ARGUMENT**

This case turns on XTO's common course of conduct which it uniformly applies to the Plaintiffs and the Class's leases, directed at all class members, and affecting all Class members in the same way. This is the precisely type of gas royalty case routinely certified by other courts, including those in Arkansas, when the plaintiff has met its burden of showing class certification is appropriate. *See* Exhibit No. 1, *Survey of Cases.*

More generally, district courts will certify class actions that involve breach of contract claims which stem from uniform contracts applied through a uniform course of conduct to an identifiable class of people. That is because a standard contract must be given a consistent, uniform interpretation. *See Restatement (Second) of Contracts* § 211(2)(1981). *See also Stuart v. State Farm Fire and Casualty Company,* 910 F.3d 371, 375 (8th Cir. 2018)(the viability of a theory that an insurer violated its contractual obligations by depreciating both materials and labor when calculating

---

to pay the Lessor the gross proceeds received by XTO from the sale of gas pursuant to each lease, without the deduction of any costs or expenses. *See W.W. McDonald Land Co. v. EQT Production Co.*, 983 F.Supp.2d 790 (S.D.W.Va. 2013)(at summary judgment analyzing fourteen leases with similar royalty provisions to determine if leases permit deductions for monetary costs).

actual cash value, reducing size of actual cash value payments, was "well suited to class wide resolution."). In short, this Court would break no new ground in certifying this case as a class action.

A. **Plaintiffs have met their burden of satisfying Rule 23(a)'s Requirements (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.**

1. **Numerosity.**

Rule 23(a)(1) requires a plaintiffs show that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In establishing numerosity, a plaintiff does not need to show the exact number of potential class members, only that the number is such that joinder is extremely difficult or inconvenient." *Walls v. Sagamore Ins. Co.*, 274 F.R.D. 248, 253 (W.D.Ark. 2011)(citations omitted). When considering close questions of numerosity "courts tend to strike a balance in favor of finding numerosity." *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 551 (W.D.Mo. 2014). Generally, "a putative class with over forty members meets the numerosity requirement." *Smith,* 2016 WL 10586286, at *5.

Further, a plaintiff need not establish the exact size of the class, only that joinder of all its members is impracticable because of its size or other factors. *See In re Marion Merrell Dow Inc., Sec. Litig.*, No. 92-0609-CV-W-6, 1994 WL 396190, at *2 (W.D. Mo. July 18, 1994). Relevant factors include the number and geographic

dispersion of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the impracticability of joining all the class members. *See, e.g., Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560-61 (8th Cir. 1982)(numerosity satisfied for subclass of approximately 74 employees).

Here, there can be no question that joinder of all class members is impracticable. XTO has produced over 1,000 leases, which Plaintiffs have reviewed and categorized. *See* Exhibits Nos. 2—11 *Lease Summaries. See also* Exhibit No. 12, *Defendant's Notice of Removal* [ECF No. 1]("If Plaintiffs' claims were typical of XTO'S 23,000 royalty payees, XTO would have deducted $200 million in post-production costs over the give-year breach of contract limitations period.")

Joinder of all of the Class members holding these leases is plainly impracticable and the numerosity requirements is satisfied.

### 2.    Commonality.

Rule 23(a)(2) requires there be "questions of law or fact common to the class" before the Court may grant class certification. In *Dukes*, 564 U.S. at 350, the Supreme Court clarified that district courts should determine whether a common question can be answered in a classwide proceeding, such that the answer will "drive the resolution of the litigation." *Id.* at 2551. The Supreme Court has held that even a "single common question will satisfy" Rule 23(a)(2). *Id.* Where a "common course

of conduct" is alleged to have caused an injury to all Class members, the commonality requirement is satisfied. *See SEECO, Inc. v. Haes*, 330 Ark. 402, 954, 954 S.W.2d 234 (Ark. 1997)("alleged overall scheme and course of conduct by the defendants designed to defraud the members of the proposed class as a group irrespective of the type of oil and gas lease or the volume of production from the leases..."). *See also Arkansas Louisiana Gas Co. v. Morris*, 294 Ark. 496, 744 S.W.2d 709 (Ark. 1988)("a common questions of fact that all fixed price lessors have been treated identically by the defendant lessees for a number of years). The central and common questions in this case are common to all Class members, and capable of resolution "in one stroke," as *Dukes* requires. *Dukes*, 131 S.Ct. at 2551. There is no question that Plaintiffs satisfy the commonality requirement.

The claims of the class will turn on the answer to common questions, and will be proved with common evidence, specifically the propriety of XTO's underpayment of royalties owed to Class Members with whom they have entered into oil and gas leases. *See Cline v. Sunoco, Inc. (R&M)*, 333 F.R.D. 676, 683 (E.D. Okla. Oct. 3, 2019).

Because the interpretation of the Class Members' leases is a question of law, the Court can also enter declaratory judgment on behalf of the classes under Rule 23(b)(2). *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.2d 402, 427 (6th Cir. 2012)("Rule 23(b)(2) certification remains available . . . when the plaintiffs seek a

declaration about the meaning of a contract").Further, to prove a claim for breach of contract in Arkansas (Count II) a plaintiff must show: (1) the plaintiff and defendant entered into a contract; (2) the contract required the defendant to perform or not to perform a certain act; (3) the plaintiff did what the contract required of it; and (4) the defendant did not do what the contract required of it. AMI 2401. This count requires the same proof for all class members.

To prove a claim for unjust enrichment (Count III), a plaintiff must show: (1) plaintiff provided goods to defendant who received the benefit of such goods; (2) the circumstances were such that the plaintiff reasonably expected to paid the value of such goods by defendant; (3) the defendant was aware that plaintiff was providing such goods with the expectation of being paid and accepted the goods; and (4) the reasonable value of such goods received by the defendant. AMI 2445.

The Plaintiffs will show that XTO's practice is to ignore lease terms that require the lessee to pay the gross proceeds derived from the sale of all oil and gas (including the substances contained in such oil and gas) produced, saved, and sold by the lessee and prohibit the lessee from deducting any gathering, transportation, dehydration, treatment, compression, processing, marketing costs or other costs[3].

---

[3]     It is settled law in Arkansas that any ambiguities in an oil and gas lease are construed against the lessee. *See Hanna Oil v. Taylor*, 759 S.W.2d 563, 565 (Ark. 1988). Further, unless something in the context of an agreement provides otherwise, "proceeds" generally means "total proceeds." *Id.* at 564. Further, any ambiguities in

Instead, of complying with the lease provisions, XTO unlawfully deducted post-production costs.

This presents a common question of law, and Rule 23(a)(2) is satisfied. *See Arkansas La. Gas Co.*, 744 S.W.2d at 710 (Ark. 1988)(affirming class certification and recognizing that whether a lessee may simply ignore royalty provisions is a common question, giving rise to a claim for all class members). Moreover, although there some variation among the royalty clauses organized by Plaintiffs, *see infra*, that presents no impediment for commonality because of how XTO pays royalties. *See Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 WL 764500, * 4 (W.D. Okla. Apr. 20, 2009)(holding communality met where "there is no difference in how royalties are paid to members of the class based on the lease language.") Additionally, the question of what remedy is owed to the Class members is a question common to the class.[4]

### 3.    Typicality.

The Eighth Circuit defines typicality as requiring "a demonstration that there

---

an oil and gas lease are construed in favor of the lessor and against the lessee. *Bodcaw Oil Co., Inc. v. Atlantic Refining Co.*, 217 Ark. 50, 61, 228 S.W.2d 626, 633 (1950).

[4]    *See Smith*, 2016 WL 10586286, * 6 ("Although individual class members might have different damage amounts, individualized damages do not preclude class certification, especially in cases where a single methodology can easily determine damage amounts.").

are other members of the class who have the same or similar grievances as the plaintiff." *Smith v. ConocoPhillips Pipeline Co.*, 298 F.R.D. 575, 584 (E.D. Mo. 2014)(*citing Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269 (8th Cir. 1990)). To satisfy this requirement, a plaintiff must show that there are "other members of the class who have the same or similar grievance as the plaintiff." *Wallis*, 274 F.R.D. at 254 (internal quotation and citations omitted). "Typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff." *In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litig.*, No. 11-MD-2247 ADM/JJK, 2012 WL 2512750, at *14 (D.Minn. June 29, 2012)(internal quotation and citation omitted). "Class representatives need not share identical interests with the class, only common objectives and legal and factual positions." *Cromeans*, 30 F.R.D. 543, at *12 (*citing Uponor Inc., F1807 Plumbing Fittings Products Liability Litig.*, 716 F.3d 1057, 1064 (8th Cir. 2013)).

Plaintiffs easily satisfy the typicality requirement. They share the interests of the Class members in being paid properly for the royalties owed to them, they each have gross-proceeds type leases, and the legal and factual theories they are asserting are the same as those of the Class. S*ee Freebird, Inc. v. Merit Energy Co.*, Civil Action No. 10-1154-KHV-JPO, 2011 WL 13638, *5 (D.Kan. Jan. 4, 2011)("[H]ere, plaintiff's claims are typical of call members claims because they all entered into gas lease agreements with defendant, they assert the same legal theory to recovery

royalty payments and they all suffered the same type of harm.").

    **4.**    <u>**Adequacy.**</u>

"In determining the adequacy of representation, the Court makes a two-fold inquiry to determine whether: (1) the class representatives have common interests with members of the class; and (2) the class representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Uponor*, 2012 WL 2512750, at *15 (internal citation and quotation omitted).

Plaintiffs satisfy this requirement. There are no conflicts between them and the Class they seek to represent, and they have clearly demonstrated that they are dedicated to prosecuting this action. *See* Exhibits No. 13, *Declaration of Plaintiff*. Further, Plaintiff's counsel satisfies the requirements of Rule 23(g) and seek an order appointing them to represent the certified class. *See* Exhibit No. 14.

    **B.**    <u>**Plaintiffs Satisfy Rule 23(b)(3).**</u>

    **1.**    <u>**Common Questions of Law and Fact Predominate.**</u>

Rule 23(b)(3) requires that "common issues of fact or law must predominate over questions affecting individual members." Fed. R. Civ. P. 23(b)(3). This requirement "tests whether proposed class members are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997). In the *Amgen* case, the Supreme Court held that "Rule 23(b)(3)... does not require a plaintiff seeking class

-13-

certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' [quoting dissent]. What the rule does require is that common questions 'predominate over any questions affecting only individual [class] members.' Fed. Rule Civ. Proc. 23(b)(3)(emphasis added)." *Amgen* 133 S.Ct. at 1196.[5] The *Amgen* court directs courts to assess whether a class' claims will "prevail or fall in unison." *Id.* at 1191. As the Eighth Circuit has explained, "individual issues are those which require evidence that varies from member to member to make a prima facie showing." *In re Zurn Pex*, 644 F.3d at 618. There are no such issues here, because all of Plaintiffs' claims are susceptible to the same common proof. Given their identical treatment by Defendant, the class members possess such cohesion and all members of the class base their claims on the same legal theory. *Beer v. XTO Energy, Inc.*, No. CIV-07-798-L, 2009 WL 76500, *7 (W.D. Okla. Apr. 20, 2009).

Plaintiffs set forth above how the questions at the heart of each of Plaintiffs' claims can be answered on a classwide basis. The proof that Plaintiffs will use to establish each of the claims in the Complaint will be common to the Class, because it will focus on XTO's conduct: their uniform royalty payment methodology, which

---

[5]     The Eighth Circuit was already in accord with this approach prior to *Amgen*. It held, "The question at class certification is not whether the plaintiffs have already proven their claims through common evidence. Rather, it is whether questions of law or fact capable of resolution through common evidence predominate over individual questions." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 619 (8th Cir. 2011)(internal citation omitted).

was applied to all Class members. Courts have repeatedly held that where an oil or gas's royalty payment practices are uniform across its lessors, as they are in this case, common issues predominate. *See* Exhibit No. 1, *Survey of Cases*.

This is a case that will turn on evidence, the Court's legal analysis and interpretation contractual language, which common to all Class members. Accordingly, Rule 23(b)(3)'s predominance requirement is satisfied.

## 2. A Class Action is Superior to Any Other Method of Adjudicating These Claims.

Rule 23(b)(3) also requires that the court find "that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A class action is superior—indeed, the only—method of resolving these claims. In assessing this fact, "the court is to compare the possible alternatives to a class action and determine if any is superior to the proposed class action." *Bouaphakeo v. Tyson Foods, Inc.*, 564 F.Supp.2d 870, 909 (N.D. Iowa 2008). Federal Rule of Civil Procedure 23(b)(3)(A)—(D) sets forth four factors that this Court should consider in determining whether a class action is superior to individual lawsuits for the resolution of the claims at issue. Analysis of these four factors confirms the superiority of a class action in resolving these claims.

Under Rule 23(b)(3)(A), this Court should consider the interests of the Class members in individually controlling the prosecution of separate actions. This is the classic case in which individual Class members do not have the financial incentive

-15-

or ability to challenge Defendant's conduct individually. As such, this Case fulfills what the Supreme Court has recognized as the class action's promise of providing similarly situated plaintiffs with relatively small claims an opportunity to obtain redress. *See, e.g., Amchem Prods.*, 521 U.S. at 617; *Klay v. Humana*, 382 F.3d 1241, 1271 (11th Cir. 2004)(noting that relatively small size of claims supports class certification especially when the "defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings"). Because individual Class members are not in a position to taken on the expense and burden of prosecuting their claims, as a practical matter, the Class members simply will not have their claims heard without a class action.

The United States Supreme Court has recognized the prevailing judicial view that class actions are the superior mechanism to provide access to a level playing field when a multiple of property owners are pitted against a powerful energy company and its conduct in honoring standard gas contracts at issue.

In *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985), which involved gas lease royalty payments and a breach-of-contract claim for overdue royalty payments, the Court noted that:

> the class action was an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the litigation was too great to permit joinder. The absent parties would be bound by the decree so long as the named parties adequately represented the

-16-

> absent class and the prosecution of the litigation was within the common interest. Modern class actions follow the same goals, permitting litigation of a suit involving common questions where there are too many plaintiffs for proper joinder. Class actions may also permit the plaintiffs to pool claims which would be uneconomical to litigate individually.

472 U.S. at 808-809 (footnote and citation omitted). Litigation has grown only more expensive since *Shutts*, and litigants face more formidable barriers here that the class action was designed to overcome. A class action is the superior form of adjudication of this dispute.

A class action is unquestionably able "to reduce litigation costs through the consolidation of recurring common issues." *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 426 (4th Cir. 2003)(internal quotation omitted). A class action is superior where the alternatives "are individual lawsuits by class members... [which] would be more burdensome on the class members, and it would be likely to be less efficient use of judicial resources." *See Bouaphakeo*, 564 F.Supp. at 909 (*citing Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234—35 (9th Cir. 1996)). As the Advisory Committee notes to Rule 23 state, the Court, in considering other pending litigation in its superiority analysis, should be aware that the interest of controlling separate lawsuits may be "theoretical rather than practical." Fed. R. Civ. P. 23 advisory committee's notes (1966 amendments).

Rule 23(b)(3)(C) addresses the desirability of concentrating the litigation of these claims in this forum. Here, the subject property is located in this district and

-17-

the gas at issue was produced in this district in Arkansas. Further, all claims are governed by Arkansas substantive law. Concentrating the litigation of these claims in this Court is therefore the most efficient way of resolving this dispute.

Rule 23(b)(3)(D) requires an assessment of the manageability of this action. Manageability should be considered only in relationship to the alternative means of adjudication. In other words, the Court determines whether class certification would "create relatively more manageability problems than any of the alternatives (including, most notably . . . separate lawsuits by the class members)." *Klay,* 382 F.3d at 1273. *See also Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004)("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative... to no litigation at all."). There are no manageability concerns here, as liability can be determined on a classwide basis, Class members are easily identifiable (indeed, they are already identified) by objective reference to Defendant's records, and there are no administrative obstacles to the sending of the notice required by Rule 23(c)(2). Courts have administered numerous gas royalty class actions through resolution with no administrative difficulties. *See e.g., SEECO,* 330 Ark. 402.

**C.    Plaintiffs Satisfy Rule 23(b)(2).**

With respect to Plaintiffs' claim for declaratory judgment (Count I), the proposed class satisfies Rule 23(b)(2) because XTO "has acted or refused to act on

-18-

grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A Determination of the merits of Court I (breach of contract) will turn on the same evidence supporting Count I (Declaratory Judgment). As such, certification under Rule 23(b)(2) is also appropriate. *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1955425, at *7 (W.D. Mo. Apr. 24, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020).

## V.   <u>NOTICE</u>

Rule 23(c) of the Federal Rules of Civil Procedure requires that "for any class certified under Rule 23(b)(3)," members of the Class should receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The courts construe this Rule as vesting a trial court with wide discretion to fashion the appropriate notice in particular circumstances, "subject only to the reasonableness standard of due process." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)(concluding that due process is satisfied so long as notice is "reasonable calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). *See also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)(same). In this case, individual notice is

practicable because information in the files of Defendant makes possible individual notice to all Class Members. Plaintiffs have concurrently filed a Motion for Approval of Class Notice Pursuant to Rule 23(c) of the Federal Rules of Civil Procedure.

## VI.   CLASS DEFINITION

Rule 23(c)(1)(B) requires this Court to define the class or classes being certified. *See* Fed. R. Civ. P. 23(c)(1)(B). Plaintiffs seek an Order from this Court Certifying the Class, as defined herein under Fed. R. Civ. P. 23(b)(2) and (3) of a class of all persons who are or have been in the previous five years, royalty owners in Arkansas wells where XTO has owned and operated under a lease form with one of the following royalty payment provisions:

**Lease Form No. 1**:       that contain the following language, "*Lessee covenants and agrees as follows with regard to royalty to be paid under the Lease:*

*B.       To pay Lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the lease preemies, or used in the manufacture of products therefrom [royalty rate percentage] of the gross proceeds received by Lessee for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than [royalty rate percentage] of the actual amount received by Lessee, said payments to be made monthly;*

*D.       Lessee shall not deduct any costs or expenses from such gross proceeds except Lessor's pro rata share of any severance taxes that may become payable out of Lessor's share of gross production.*"[6]

---

[6]       Ten examples of Lease Form No. 1: are attached as Exhibit No. 2.

**Lease Form No. 2**:        that contain the following language, "*Lessee shall pay Lessor [royalty rate percentage] of the proceeds derived from the sale of all gas at the well (including substances contained in such gas) produced, saved, and sold by Lessee. Proceeds are defined as the actual amount received by the Lessee for the sale of said gas in an arm's length, non-affiliated transaction. In the event that the sale is to an Affiliate ("Affiliate" being defined as having a ten percent (10% percent common ownership), then the proceeds derived from the sale of all gas shall be a price no less than that received from any other purchaser within the governmental township and range which the lease is situated.*"[7]

**Lease Form No. 3**:        that contain the following language, "*Royalty shall be free of costs or deductions.*"[8]

**Lease Form No. 4:**        that   contain   the   following   language, "*notwithstanding any language herein to the contrary, all gas, oil or other proceeds accruing to Lessor under this lease shall be without deduction, of any kind whatsoever, directly or indirectly, including but not limited to the cost of gathering, transporting, treating, compressing, processing, marketing, or otherwise making gas, oil or other products produced   hereunder   merchantable   or   otherwise   enhancing   the marketability of said gas, oil or other substances..*"[9]

**Lease Form No. 5:**        that contain the following language, "*To pay Lessor for gas of whatever nature or kind (with all its constituents to include all benefits from said Lease such as storage payments or take or pay settlements) produced and sold or used off the Lease Premises, or used in the manufacture of products therefrom, [royalty rate percentage] of the gross proceeds received for the gas sold, used off the*

---

[7]        Ten examples of Lease Form No. 2: are attached as Exhibit No. 3.

[8]        Ten examples of Lease Form No. 3: are attached as Exhibit No. 4.

[9]        Ten examples of Lease Form No. 4: are attached as Exhibit No. 5.

*Lease Premises, or in the manufacture of products therefrom.*"[10]

**Lease Form No. 6:**        that contain the following language, "*Lessee shall pay or, if required by law, contribute to be paid the Lessor [royalty rate percentage] of the <u>gross proceeds</u> released by Lessee at the well for all gas (including all substances contained in gas) produced from the leased premises and sold by Lessee, but such Royalty Interest shall bear any paid its proportionate share of all taxes and the actual, reasonable costs (including related fuel charges) paid to or deducted by a third party to gather, transport, compress, stabilize, process and treat the oil, gas and other minerals in connection with the marketing of production.*"[11]

**Lease Form No. 7:**        that contain the following language, "*2. Lessee shall pay Lessor [Royalty Rate Percentage] of the proceeds derived from the sale of all gas (including substances contained in such gas) produced, saved, and sold by Lessee. Proceeds are defined as the <u>actual amount received</u> by the Lessee for the sale of said gas.*"[12]

**Lease Form No. 8:**        that contain the following language, "*Lessor's royalty shall be computed on the sales price that Lessee received from the sale of gas at the mouth of the well. However, if any sale of said gas is made to a purchaser, and Lessee should receive any amount either directly or indirectly from the purchase, whether as a result of a re-sale thereof by purchaser or otherwise, then in such event, the price of said gas at the well shall be increased by this additional amount and Lessor shall receive its proportionate part thereof. <u>It is expressly understood that Lessor's royalty on the sale of oil and gas, including casing head gas, shall be delivered free and clear from all costs, including, but not limited to, costs of gathering, **treating,***</u>

---

[10]    Ten examples of <u>Lease Form No. 5</u>: are attached as Exhibit No. 6, along with one example that appears in the leases' addendum.

[11]    Ten examples of <u>Lease Form No. 6</u>: are attached as Exhibit No. 7.

[12]    Ten examples of <u>Lease Form No. 7</u>: are attached as Exhibit No. 8.

*separating, measuring, compression, processing, dehydration, manufacturing, marketing, trucking or transporting.*"[13]

**Lease Form No. 9:** that contain the following language, "*Lessor shall pay Lessor [Royalty Rate Percentage] of the* ~~net~~ *proceeds derived from the sale of all gas (including substances contained in such gas) produced, saved, and sold by Lessee. Net proceeds are defined as the actual amount received by lessee for the sale of gas less any necessary costs to render gas marketable after production, including compression, if necessary, and any expense incurred by lessee in the transportation from the well to the purchasers pipeline.*"[14]

**Lease Form No. 10:** that contain the following language, "*Lessee agrees that* _Lessor shall not be responsible for any production costs,_ *except Lessor shall be responsible for their proportionate share of third party cost associated with the transportation and treatment of the production from the herein leased lands or lands pooled therewith. In no event will the price paid to Lessor for Lessor's share of the products be less than the price paid Lessee for Lessee's share of the products.*"[15]

## VII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Class Certification, appoint Plaintiffs as Class Representatives, and appoint the counsel below as Class Counsel.

---

[13]    Ten examples of <u>Lease Form No. 8</u>: are attached as Exhibit No. 9.

[14]    Ten examples of <u>Lease Form No. 9</u>: are attached as Exhibit No. 10.

[15]    Three examples of <u>Lease Form No. 10</u> are attached as Exhibit No. 11.

DATED: October 28, 2022          Respectfully Submitted,

_____

M. Edward Morgan, (AR #82113)
Nathan S. Morgan (AR#09269)
MORGAN LAW FIRM, P.A.
244 Highway 65 North, Suite 5
Clinton, AR 72031-7085
(501) 745-4044 / fax: (501) 745-5358
Email: eddie@medwardmorgan.com
Email: nathan@morganlawfirmpa.com

Thomas P. Thrash, esq. (#AR 80147)
Will T. Crowder, esq. (#AR 03138)
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201-1214
(501) 374-1058 / fax (501) 374-2222
Email: tomthrash@thrashlawfirmpa.com
Email: willcrowder@thrashlawfirmpa.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Friday, October 28, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Elizabeth L. Tiblets
K&L GATES LLP
301 Commerce Street, Suite 3000
Fort Worth, TX 76102-4136
(817) 347-5270 / fax (817) 347-5299
Email: Elizabeth.tiblets@klgates.com

Robert M. Honea
HARDIN, JESSON & TERRY, PLC
5000 Rogers Avenue, Suite 500
Fort Smith, AR 72917-2098
(479) 452-2200 / fax (479) 452-9097
Email: honea@harrdinlaw.com

Will Crowder (#AR03138)
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201-1214
(501) 374-1058 / fax (501) 374-2222
Email: willcrowder@thrashlawfirmpa.com